DA 07-0678

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 196N

IN THE MATTER OF THE CUSTODY
AND PARENTAL RIGHTS OF
C.L., J.L., H.L., and L.L.,

       Youths in Need of Care.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Broadwater, Cause Nos. DN 2005-001,
DN 2005-002, DN 2005-003, and DN 2005-004
Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

       Cathleen O. Sohlberg, Office of Public Defender, Missoula, Montana

       For Appellee:

       Hon. Mike McGrath, Montana Attorney General; David Ole Olson,
Assistant Attorney General, Helena, Montana

       John T. Flynn, Broadwater County Attorney, Townsend, Montana

Submitted on Briefs:  April 24, 2008

Decided:  June 4, 2008

Filed:

_____
                Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Pursuant to Section 1, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2003, the following memorandum decision shall not be cited as precedent. Its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 On October 18, 2007, the District Court of the First Judicial District, Broadwater County, terminated the parental rights of C.L. and L.L. to their four biological children, J.L. (boy, age eleven), H.L. (girl, age two), C.L. (boy, age fourteen), and L.L. (girl, age seven). The findings of facts in support of its decision were supported by clear and convincing evidence and the statutory criteria for termination were satisfied. Therefore, we conclude the District Court did not abuse its discretion and affirm.

¶3 On September 7, 2005, Department of Health and Human Services of the State of Montana (DPHHS) social worker Tawnee Lambert (Lambert) received a call from law enforcement officials in Broadwater County to assist in the interview of a female teenage runaway from California. During the course of her interview, the runaway explained to Lambert that she had been brought to Townsend, Montana, by an adult male and had been living in a house in Townsend with C.L. and L.L. She claimed that both C.L. and L.L. had assisted her in the intravenous use of methamphetamines, and that she had been raped by two different men while in their home.

¶4 Lambert subsequently decided to investigate. Prior to this investigation, DPHHS had a history of reports on the family, alleging physical neglect due to a dirty home and

2

lack of supervision. Additionally, Lambert was aware that when L.L.'s oldest boy had been born to her, he had been removed from the home for one year after testing positive for methamphetamines. As a result of her investigation, Lambert discovered evidence that there was parental drug use and the distribution of methamphetamine from the family home. The living conditions were also squalid and unsanitary. J.L., H.L., C.L., and L.L. were immediately removed from the care of their parents on September 9, 2005, and placed in emergency foster care. On September 12, 2005, the children were placed in the home of their maternal uncle and his wife in Townsend.

¶5 On September 15, 2005, the Broadwater County Attorney, on behalf of DPHHS, filed a Petition for Emergency Protective Services, Temporary Legal Custody, and Temporary Investigative Authority. The District Court granted the Petition, and later extended temporary legal custody after a show cause hearing. Because C.L. had cooperated with law enforcement officials in securing convictions for individuals involved in drug transactions he was not incarcerated. He subsequently entered into a court-approved treatment plan effective on October 30, 2006, with the goal of eventually reuniting with his children. L.L. was arrested and later transferred to a federal prison in California where she was incarcerated.

¶6 On April 3, 2007, a petition was filed to terminate the parental rights of C.L. and L.L. over their four children. In the termination petition, the Broadwater County Attorney alleged that the children had been adjudicated as youths in need of care, that C.L. had failed to comply with his treatment plan, and that termination was in the children's best interests. The treatment plan required C.L. to maintain a drug-free

3

lifestyle, not associate with drug users, and develop a budget showing that he could provide for the necessities of his children. C.L. failed all three tasks. Between September 2005 and November 2006, he tested positive for marijuana or methamphetamines five times. At some point after signing the treatment plan, Lambert verified that C.L. was living with two known drug users. Additionally, C.L. proved unable to provide for his own food requirements, as well as his rental needs and utility payments.

¶7 A termination hearing was held on August 31, 2007. At that hearing, the District Court was informed that the mother, L.L., was in federal prison in California and would be released in September of 2008 or 2009. The District Court also received testimony from Lambert, the children's therapist, a child protection worker, and the children's guardian ad litem, that it would be in the best interest of the children to terminate C.L.'s and L.L.'s parental rights. These witnesses testified that all the children were doing well in their placement, and had expressed a desire to continue living there. A psychologist further testified that C.L. had cognitive problems which made it very difficult for him to manage his day-to-day existence. Finally, C.L. himself testified that he was in no condition to parent his children at that time.

¶8 Accordingly, the District Court ordered a termination of parental rights. It found that C.L. had failed to comply with the treatment plan, and that the children had been adjudicated youths in need of care. The District Court also found that the mother, L.L., would be incarcerated for more than one year, and that reunification with her would not be in the children's best interests because of their circumstances, age, and psychological

4

needs. The District Court also found that the condition rendering the parents unfit was unlikely to change within a reasonable time, and that the continuation of the parent/child relationship would result in continued abuse and neglect. Additionally, the District Court concluded that the children had been in foster care under the physical custody of the State of Montana for more than fifteen of the past twenty-two months, thus giving rise to a statutory presumption that parental termination was in the children's best interest. Accordingly, the District Court terminated the parental rights of L.L. and C.L.

¶9 On appeal, C.L. argues the District Court abused its discretion in terminating his parental rights. In particular, C.L. asserts the District Court misapplied § 41-3-604(1), MCA. Under that statute, if a child has been in foster care under the custody of the State for more than fifteen of the past twenty-two months, a presumption arises that termination is in the best interest of the child. Section 41-3-604(1), MCA. Furthermore, DPHHS must file a termination petition. However, if the child has been in the care of a relative during this time, then DPHHS is not required to file a termination petition. Section 41-3-604(1)(a), MCA. In this case, the children had been in the care of their maternal uncle and his wife since September 12, 2005. Thus, C.L. argues, the statutory presumption does not apply in this case and the District Court erred by concluding that it did. Additionally, C.L. maintains that the State has the burden of proving that C.L.'s treatment plan was appropriate, but failed to do so.

¶10 We review a decision to terminate parental rights for an abuse of discretion. *In re A.S.*, 2006 MT 281, ¶ 24, 334 Mont. 280, ¶ 24, 146 P.3d 778, ¶ 24. An abuse of discretion occurs when a district court acts arbitrarily, without the employment of

conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice. *In re A.S.*, ¶ 24. Moreover, a decision to terminate parental rights must be supported by specific factual findings, and the party seeking termination must demonstrate by clear and convincing evidence that the statutory requirements for termination have been satisfied. *In re C.J.K.*, 2005 MT 67, ¶¶ 13-14, 326 Mont. 289, ¶¶ 13-14, 109 P.3d 232, ¶¶ 13-14.

¶11 In this case, the District Court did not abuse its discretion in terminating C.L.'s and L.L.'s parental rights. We agree with the State that C.L.'s treatment plan was appropriate, and further that C.L. waived any argument in this regard by failing to raise this issue before the District Court. *Anderson v. State*, 2007 MT 336, ¶ 13, 340 Mont. 242, ¶ 13, 174 P.3d 475, ¶ 13. Moreover, C.L. misinterprets § 41-3-604(1), MCA. Under § 41-3-604(1)(a), MCA, the State is not required to seek termination of parental rights if a child has been in the custody of a relative for fifteen of the past twenty-two months. However, the State may still seek termination if it wishes to, and, contrary to C.L.'s assertions, nothing in the statute prohibits it from doing so. Additionally, C.L. points to nothing in the record demonstrating that the District Court's decision to terminate was not supported by clear and convincing evidence, or that the statutory requirements contained in Title 41, Chapter 3, Part 6, MCA, were not otherwise satisfied.

¶12 For these reasons, we affirm the District Court's termination of C.L.'s and L.L.'s parental rights.

/S/ PATRICIA COTTER

6

We concur:

/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS
/S/ JIM RICE